UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

    v.                                                                           Crim. Action No. 5:13–cr–152

Erik Downs

## REPORT AND RECOMMENDATION
(Docs. 58, 66)

Defendant Erik Downs, proceeding *pro se*, has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence imposed upon him following his pleas of guilty to two felony offenses. (Docs. 58, 66.) In his initial § 2255 motion (Doc. 58), Downs claims that he received ineffective assistance of counsel, which rendered his guilty pleas involuntary, in violation of his rights under the Sixth Amendment to the United States Constitution. In his amended § 2255 motion (Doc. 66), Downs adds a claim that the district court erred in the determination of his sentence. Finding no merit to Downs's claims, I recommend that his § 2255 motion and amended motion (Docs. 58, 66) be DENIED.

## Background

### I. The Indictment

On November 14, 2013, the federal grand jury returned an Indictment charging Downs with two felony violations. (Doc. 9.) In Count 1, Downs was charged with knowingly and intentionally distributing 28 grams or more of cocaine base, in violation

of 21 U.S.C. § 841(a)(1) and (b)(1)(B).  (*Id.* at 1.)  In Count 2, Downs was charged with knowingly possessing a firearm in furtherance of a drug trafficking crime (distribution of cocaine base), in violation of 18 U.S.C. § 924(c)(1)(A).  (*Id.* at 2.)  Prior to the filing of the Indictment, the Office of the Federal Public Defender had been appointed to represent Downs pursuant to 18 U.S.C. § 3006A, and Assistant Federal Public Defender Stephen Barth had entered his notice of appearance as counsel of record on behalf of Downs. (Docs. 4, 8.)

## II.    Pretrial Motions

Attorney Barth filed a motion seeking to suppress oral statements made by Downs following his November 5, 2013 arrest.  (Doc. 18.)  An evidentiary hearing was held on June 5, 2014, where Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agents Scott Murray and James Mostyn testified and were subject to cross-examination.  (Doc. 24.)  Subsequently, counsel for each party submitted a post-hearing memorandum.  (Docs. 25, 26.)  On July 29, 2014, Chief United States District Judge Christina Reiss issued an Opinion and Order denying the motion to suppress Downs's statements following his arrest.  (Doc. 30.)

## III.   The Withdrawn Plea Agreement

On July 29, 2014, the parties signed and filed a Plea Agreement.  (Doc. 31.) Therein, the government agreed to abandon the drug quantity allegation set forth in Count 1 of the Indictment, and Downs agreed to plead guilty to the portion of Count 1 that charged him with knowingly and intentionally distributing an unspecified quantity of cocaine base.  Downs also agreed to plead guilty to the § 924(c) firearms violation

alleged in Count 2. By entering into the Agreement without admitting to the drug quantity allegation, Downs would avoid the five-year mandatory minimum term of imprisonment required for a conviction under the Controlled Substances Act, 21 U.S.C. § 841(b)(1)(B). In the Agreement, Downs acknowledged his understanding that the five-year mandatory minimum sentence to be imposed as a consequence for his plea of guilty to the § 924(c) violation charged in Count 2, would be imposed to run consecutively to any sentence imposed for the drug felony violation charged in Count 1. (*Id.* at 1–2.) Moreover, the parties stipulated in the Agreement that a sentence of nine years would be "the appropriate total term of imprisonment the Court should impose" under Fed. R. Crim. P. 11(c)(1)(C). (*Id.* at 5.)

In the period between accepting the Agreement and the scheduled change of plea hearing, however, Downs decided to not go through with the guilty plea as set forth in the Agreement. (Doc. 50 at 2.) On August 11, 2014, Attorney Barth advised the court of this change in plan, making it clear that Downs's decision not to proceed with the guilty plea as set forth in the Agreement was against Barth's professional advice. (*Id.* at 2–3.) According to Barth, Downs wished to plead guilty to both counts of the Indictment as charged, including the drug quantity allegation, thereby subjecting himself to a combined mandatory minimum sentence exposure of ten years. (*Id*. at 3.)

The court inquired of Downs, ascertaining that Attorney Barth had accurately stated his position. (*Id.* at 5–6, 12.) Downs advised that he was rejecting the Agreement because he believed that Congress would soon enact legislation that would be beneficial to him, but that the anticipated benefits of the proposed legislation would not be available

to him if he pled guilty pursuant to a binding plea agreement under Rule 11(c)(1)(C). (*Id.* at 5–7.) The court encouraged Downs to seek a second opinion concerning his decision, and the proceeding was adjourned to allow Downs time to consult with another attorney. (*Id.* at 10–12.)

On August 20, 2014, a second status conference was held. (Doc. 51.) The court began by summarizing the prior proceeding and noting that Downs had indicated his desire to plead guilty to the Indictment without the benefit of a plea agreement "in anticipation of changes to mandatory minimums." (*Id.* at 2.) Attorney Barth stated that Downs now would not plead guilty to any charge and wished to exercise his right to proceed to a jury trial. (*Id.* at 3.) Upon the court's inquiry, Downs confirmed that he wished to go to trial on both counts of the Indictment, explaining: "I couldn't take the plea being that I wanted to make a claim that—claim can't be made if I take the locked plea, and I at least want to—I was willing to plead to one count over, but since I can't do it, I guess I will have to go to trial." (*Id.* at 4–5.) As a result, the court conducted a pretrial conference, and trial was scheduled for late September.

## IV.   The Change of Plea

About a week later, Downs again decided to reverse course. On August 29, 2014, he appeared in district court for further proceedings, and Attorney Barth advised that Downs now wished to enter pleas of guilty to both counts of the Indictment without the benefit of a written plea agreement. (Doc. 53 at 2.) In response to the court's inquiry, Downs confirmed that he wished to plead guilty to the Indictment without the benefit of a plea agreement, stating that he had had "ample time to consider [his decision]." (*Id*. at 3.)

4

The court then proceeded to conduct the colloquy required by Rule 11 of the Federal Rules of Criminal Procedure. After being sworn, Downs advised the court that he had a full opportunity to discuss the case with his lawyer and that he was satisfied with the representation that lawyer provided to him. (*Id.* at 6–7.) Downs confirmed that no one had threatened, pressured, or coerced him into entering the two guilty pleas. (*Id.* at 7.)

Prior to accepting the guilty pleas but toward the end of the Rule 11 colloquy, the court observed that it had failed to advise Downs of the penalties he faced by his plea to each count of the Indictment. (*Id.* at 17.) Relying on the rejected Plea Agreement—in which the government had offered to forego proof of the drug quantity allegation—the court erroneously advised Downs that on his plea to the distribution of 28 grams or more of cocaine base as charged in Count 1, he faced a statutory maximum of "up to 20 years of imprisonment." (*Id.*) The Assistant United States Attorney interrupted and pointed out that, because of the drug quantity allegation of 28 grams of cocaine base, a plea to the charge set forth in Count 1 required the imposition of a mandatory minimum term of imprisonment of five years and a maximum term of 40 years pursuant to 21 U.S.C. § 841(b)(1)(B). (*Id.* at 17–18.) The court thereupon revised its statement describing the penalties to Downs, and correctly informed him that the plea of guilty to the drug distribution charge carried with it a mandatory minimum term of imprisonment of five years and a 40-year maximum term. (*Id.* at 18–19.)

The court then informed Downs that on his plea of guilty to the firearms charge in Count 2, Downs faced a *second* mandatory minimum term of five years in prison which, by statute, had to be imposed to run consecutively to the sentence imposed on Count 1.

5

(*Id.* at 19.)  Downs acknowledged that he understood his sentencing exposure as accurately explained by the court.  (*Id.*)  He then formally entered pleas of guilty to both Counts.  (*Id.* at 19–20.)  The court accepted the guilty pleas and concluded that Downs was fully competent and capable of entering an informed plea and was aware of the nature of the charges and consequences of the pleas; and that the pleas were "knowing and voluntary" and "supported by an independent basis of fact containing each of the essential elements of the offense[s]" to which Downs entered guilty pleas.  (*Id.* at 20.)

## V.    Sentencing

The United States Probation Office prepared a Presentence Investigation Report (PSR) in anticipation of sentencing.  Utilizing the 2014 version of the United States Sentencing Commission Guidelines Manual, the PSR first calculated Downs's advisory Sentencing Guideline range with respect to the distribution count as 51–63 months, based on an offense level of 23 and a criminal history category of II.  (PSR ¶ 78.)  The adjusted offense level of 23 included a two-level enhancement for Downs's "reckless endangerment during flight," including Downs's attempt to flee from officers during the arrest, which caused injury to an officer, pursuant to USSG § 3C1.2.  (*Id.* ¶ 24.)  Regardless, the PSR noted that Downs faced a mandatory minimum term of imprisonment of five years as a consequence of his plea of guilty to Count 1; and, by operation of 18 U.S.C. § 924(c), another five-year mandatory minimum term of imprisonment due to his plea of guilty to Count 2, to run consecutive to the sentence imposed on Count 1.  (*Id.* ¶ 77.)  Downs faced an overall exposure of 120–123 months' imprisonment under USSG § 5G1.2(a).  (*Id.* ¶ 78.)

Prior to sentencing, Attorney Barth filed a sentencing memorandum asserting two legal objections to the conclusions set forth in the PSR. (Doc. 42.) First, Barth challenged application of the "reckless endangerment during flight" enhancement under USSG § 3C1.2, asserting that the government could not meet its burden to establish a factual basis for the enhancement. (*Id.* at 2.) More precisely, Barth argued that the agent at the scene had not actually suffered any injury when Downs attempted to flee. (*Id.*) Attorney Barth also challenged the 18:1 ratio between the offense levels for offenses involving cocaine base and powder cocaine under USSG § 2D1.1. (*Id.* at 4–5.) Finally, acknowledging that Downs faced a statutory mandatory minimum term of imprisonment of 120 months, Barth sought a downward departure or variance from the Sentencing Guideline range of 120–123 months based on the unfairness of this ratio and other reasons, including Downs's difficult childhood, his drug addiction, and the overall harshness of the Sentencing Guidelines. (*Id*. at 3–4.)

Sentencing was held on February 13, 2015. (Doc. 48.) The court ascertained from Downs that there were no factual objections to the PSR other than objections relating to application of the reckless endangerment during flight enhancement. (*Id.* at 2–3.) Attorney Barth then presented oral argument on that objection, as well as on the request for a departure or variance from the Sentencing Guideline range. Because Downs's sentence was controlled by the two mandatory minimum sentences, however, both the court and Attorney Barth acknowledged the academic nature of the discussion concerning the advisory Sentencing Guidelines. (*Id*. at 2–3, 17, 20.) Barth candidly stated that he was advancing his arguments and objections solely to preserve them in the event there

7

was a change in the controlling law so that Downs would be able to avail himself of that change. (*Id*. at 14.) When given an opportunity to address the court, Downs confirmed that sentiment, stating: "Me, I want to reserve my right[s] today just in case something later happens." (*Id*. at 18.)

The court determined that the "reckless endangerment during flight" enhancement applied, concluding that Downs recklessly created a risk of injury in the course of fleeing from the arresting officers. (*Id*. at 19–20.) Nonetheless, the court expressed its general disagreement with the 18:1 ratio between cocaine base offenses and powder cocaine offenses, stating that "if it was a guideline issue in this case, I would have granted a one-to-one powder-to-crack ratio." (*Id*. at 21.) The court also expressed its disagreement with the ten-year sentence that it was required by statute to impose, stating: "I don't think it's a [ten]-year offense. That would not be my choice for you." (*Id*. at 26.) Nevertheless, the court imposed a sentence of 60 months on Count 1, as required by 21 U.S.C. § 841(b)(1)(B), and a consecutive sentence of 60 months on Count 2, as required by 18 U.S.C. § 924(c)(1)(A), for a total of 120 months. (*Id*. at 29.) Following sentencing, Downs filed a Notice of Appeal to the Second Circuit. (Doc. 45.)

## VI.  The Direct Appeal

The Office of the Federal Public Defender also represented Downs in his direct appeal. A brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) was filed by that office, accompanied by a motion to withdraw as counsel. (Doc. 55.) Under *Anders*, where counsel cannot identify an issue for appeal, it may seek to withdraw; but counsel is first required to conduct a "conscientious examination" of possible grounds for appeal

8

and submit a "brief referring to anything in the record that might arguably support the appeal," including references both to the record and to potentially applicable legal authorities.  *Anders*, 386 U.S. at 744.  In light of the filing of the *Anders* brief, the government moved for summary affirmance.  On March 8, 2016, the Court of Appeals granted both the motion to withdraw and the government's motion for summary affirmance.  (Doc. 55.)

## VII.   The Instant Motions

In the pending § 2255 motion and amended motion (Docs. 58, 66), Downs makes three contentions.  First, he argues that Attorney Barth was ineffective for purportedly advising Downs that his sentence for the possession of a firearm during a drug trafficking crime charged in Count 2 would run concurrently with the sentence to be imposed for the distribution of cocaine base charged in Count 1, rather than consecutively to that count, as the applicable statute mandates.  (Doc. 58 at 5.)  Second, Downs contends that the district court erred in failing to use a 1:1 ratio between cocaine base and powder cocaine offenses in the determination of the offense level calculation under the advisory Sentencing Guidelines.  (Doc. 66-1 at 3.)  Third, Downs claims that the district court erred in applying the reckless endangerment during flight enhancement under § 3C1.2 of the advisory Sentencing Guidelines.  (*Id.* at 5.)  In response to Downs's ineffective assistance of counsel claim, Attorney Barth has filed an Affidavit wherein he denies Downs's assertion, stating: "I never informed Mr. Downs that his sentences (on Counts 1 and 2) would run concurrently."  (Doc. 69 at 1, ¶ 5.)  Barth continues: "Instead, on multiple occasions, I informed Mr. Downs that Count 2 would run *consecutively* to Count

1 for a combined minimum mandatory penalty of [ten] years in prison and a maximum of life in prison." (*Id.*, ¶ 6 (emphasis added).)

## Discussion

### I. Standard of Review

Under 28 U.S.C. § 2255(a), a prisoner in federal custody may move the federal district court that sentenced him to "vacate, set aside[,] or correct" the sentence on the ground that it "was imposed in violation of the Constitution or laws of the United States." Ineffective assistance of counsel claims may be brought under § 2255. *See Massaro v. United States*, 538 U.S. 500, 509 (2003). To prove such a claim, the petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms," *Strickland v. Washington*, 466 U.S. 668, 688 (1984); and (2) "any deficiencies in counsel's performance [was] prejudicial to the defense," *id.* at 692. The petitioner bears the burden of establishing both that his counsel's performance was deficient and that he suffered prejudice as a result. *See United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004). This standard applies to ineffective assistance of counsel claims which, as here, have arisen out of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

Counsel's performance is deficient when he "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The standard for attorney performance is that of "reasonably effective assistance," *id.*; and the petitioner must show that counsel's representation "fell below an objective standard of reasonableness," *id.* at 688. Demonstrating that the

10

deficient performance prejudiced the defense requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also United States v. Caracappa*, 614 F.3d 30, 46 (2d Cir. 2010). Stated differently, the petitioner must show that counsel's deficient performance "actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693.

## II.     *Strickland's* **Performance Prong**

Downs's only contention with respect to his ineffective assistance of counsel claim is that Attorney Barth incorrectly advised him that his sentence for firearm possession would run concurrent with, rather than consecutive to, his sentence for drug distribution. (Doc. 58 at 4.) As noted above, Barth denies this claim, and states that he accurately advised Downs on multiple occasions that the sentences would run concurrently. (Doc. 69 at 1.) There is ample corroboration in the record to support Barth's version of the pre-plea advice he gave Downs. First, the Plea Agreement filed by the parties makes specific reference to the "consecutive" nature of the penalty. (*See* Doc. 31 at 2.) Although Downs ultimately reversed course and rejected that Agreement, he was clearly placed on notice of the penalty by signing it.

More importantly, at the change of plea proceeding, Downs was specifically told of the mandatory and consecutive nature of the § 924(c) sentence by Chief Judge Reiss when reviewing the penalties:

> Count 2. Up to lifetime imprisonment, a five-year mandatory minimum term of imprisonment, up to five years' supervised release, up to a $250,000 fine, a $100 special assessment, and a sentence of imprisonment imposed on Count 2 *must run consecutive* to any sentence of imprisonment imposed in connection with Count 1.

11

(Doc. 53 at 19 (emphasis added).) Under oath, Downs told the Chief Judge that he understood this penalty as it had been described to him by the court. (*Id*.) Additionally, Downs informed the court earlier in the proceeding that no one had made any promises or representations to him that he was relying on in pleading guilty. (*Id.* at 7.)

Downs bears the burden of proving the truth of his claim that Attorney Barth's performance was constitutionally deficient. His present self-serving assertions are not borne out by either Barth's Affidavit or the record as a whole. Thus, Downs's *Strickland* claim fails.

### III. Remaining Claims

Downs's remaining claims—that the district court erred in applying the two-level enhancement in the Sentencing Guideline calculation for "reckless endangerment during flight" pursuant to USSG § 3C1.2, and that the court erred in not granting a downward departure from the Sentencing Guidelines based on a 1:1 ratio between cocaine base and cocaine powder offenses—also fail, as they were not raised in Downs's direct appeal and are subject to procedural default. Failure to raise errors, even of constitutional dimension, on direct appeal constitutes a procedural default that bars review under § 2255 unless the petitioner can show cause excusing the default and prejudice resulting from the challenged errors. *See Campino v. United States*, 968 F.2d 187, 189–90 (2d Cir. 1992). Downs makes no effort to excuse his default, and thus the sentencing claims are barred from collateral review.

Even if they were not procedurally barred, Downs's sentencing claims would fail because they are completely meritless. As discussed above, Downs's sentence was based

on the minimum terms of imprisonment required by the controlling statutes and not the advisory Sentencing Guidelines. Section 2255 does not provide a remedy for every claim of error. *See United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, relief under the statute is available only to remedy constitutional, jurisdictional, or otherwise fundamental defects. *Id.*; *see United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (stating relief under § 2255 "is generally available . . . only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect[,] which inherently results in a complete miscarriage of justice'" (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962))). "Insofar as claims regarding a sentencing court's error in failing to properly apply the Sentencing Guidelines are neither constitutional nor jurisdictional, . . . absent a complete miscarriage of justice, such claims will not be considered on a § 2255 motion where the defendant failed to raise them on direct appeal." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996).

Where, as here, a particular case involves a statutory mandatory minimum sentence that may exceed the applicable Guideline range, the court must set the Guideline sentence at the statutorily required minimum. USSG § 5G1.1(b); *see United States v. Johnson*, 517 F.3d 1020, 1024 (8th Cir. 2008). Thus, where a defendant has a Guideline range below the mandatory minimum before applying USSG § 5G1.1(b), the Guideline sentence becomes the statutory mandatory minimum. *See* USSG § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."); *Brown v. United States*, Nos. 97 Civ. 1880(RPP), 92 CR. 816–02(RPP), 97

13

Civ. 2194(RPP), 92 CR. 816–01(RPP), 1998 WL 30273, at *2 (S.D.N.Y. Jan. 28, 1998) ("Therefore, even if Morgan's guideline range were reduced to account for the fact she was not a manager, she would still be subject to the same mandatory minimum sentence.")  In sum, even assuming for purposes of this discussion that an error was made under the advisory Sentencing Guidelines, the error would have been harmless, as it would have had no effect on the sentence that was imposed.  (*See* Doc. 71 at 2.)

## IV.   Evidentiary Hearing

A district court should not dismiss a § 2255 motion without conducting an evidentiary hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  Section 2255 does not, however, "strip the district courts of all discretion to exercise their common sense," *Machibroda v. United States*, 368 U.S. 487, 495 (1962), and courts may "entertain and determine [a § 2255] motion without requiring the production of the prisoner at the hearing," 28 U.S.C. § 2255(c).  The Second Circuit held:

> It is within the district court's discretion to determine whether a hearing is warranted.  Among the wealth of materials available to the district court at its direction are the trial record, letters, documents, exhibits, affidavits[,] and written interrogatories.  After expanding the record, the district court then decides if an evidentiary hearing also is required.  Our precedent disapproves of summary dismissal of petitions where factual issues exist[], but it permits a "middle road" of deciding disputed facts on the basis of written submissions.

*Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003) (citations omitted); *accord, e.g.*, *United States v. Howard*, 443 F. App'x 596, 600 (2d Cir. 2011); *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011); *Campusano v. United States*, 442 F.3d 770, 776 (2d

14

Cir. 2006) ("As noted in *Chang v. United States*, 250 F.3d 79, 85–86 (2d Cir. 2001), and *Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003), the district court has discretion to determine if a testimonial hearing will be conducted."); *Chang*, 250 F.3d at 85 ("[Petitioner's § 2255] claim was not summarily dismissed by the district court. At the request of the court, the record was supplemented by a detailed affidavit from trial counsel credibly describing the circumstances concerning [the claim]. We believe that with that submission the record was sufficient to support dismissal of the petition.").

Because the issues raised in Downs's motions can be resolved on the existing record, including the written Plea Agreement and the sentencing transcripts, and because the record conclusively demonstrates that Downs is not entitled to relief; an evidentiary hearing is not necessary.

## **Conclusion**

For these reasons, I recommend that Downs's motion and amended motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255 (Docs. 58, 66) be DENIED. I further recommend that a certificate of appealability be DENIED. A certificate of appealability in a § 2255 proceeding may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, a certificate will not issue unless reasonable jurists could debate whether the petition should have been resolved in a different manner, or the issues are "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Downs has not made the required showing.

Dated at Burlington, in the District of Vermont, this 27th day of July 2017.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).